ERIKA BIRCH (Bar No. 7831)
JONATHAN K. THORNE (Bar No. 9727)
**STRINDBERG & SCHOLNICK, LLC**
1516 W. Hays St.
Boise, Idaho 83702
tel: 208.336.1788
fax: 208.278.3708
erika@idahojobjustice.com
jonathan@utahjobjustice.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **TERRY D. GAMMEL**, <br><br>        Plaintiff, <br><br> vs. <br><br> **KUNA RURAL FIRE PROTECTION DISTRICT,** d/b/a/ **KUNA RURAL FIRE DISTRICT,** a municipality; and in their individual and official capacities: **PERRY PALMER**, Former Fire Chief, **M.G. BUD BEATTY, JR**., Chairman, **TIM CRAWFORD**, Commissioner, **MIKE SMITH**, Commissioner, **HAL HARRIS**, Commissioner, **DEBI ENGLEHARDT-VOGEL**, Commissioner, <br><br>        Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> Case No. <br><br> Judge |

Plaintiff Terry D. Gammel ("Mr. Gammel") by and through his attorneys, hereby complains against Defendants Kuna Rural Fire District ("KRFD" or "District"), Perry Palmer, Former Fire Chief, M.G. Bud Beatty, Jr., Chairman, Tim Crawford, Commissioner, Mike Smith, Commissioner, Hal Harris, Commissioner, and Debi Englehardt-Vogel, Commissioner,

(collectively "Defendants") as follows:

## I. NATURE OF THE CLAIMS

1.  This suit is brought by a former employee of the Defendants under 42 U.S.C. § 1983 ("§ 1983") for deprivation of his procedural due process rights and his liberty interest in his good name and reputation without due process of law and for retaliation in engaging in protected activity under Idaho's Protection of Public Employees Act, I.C. §6-2101 *et seq.* Mr. Gammel seeks all available remedies including but not limited to equitable relief, damages, attorneys' fees, costs, and interest.

## II. PARTIES

2.  Defendant KRFD is a governmental municipality designated as a fire protection district, created pursuant to Idaho Law. See I.C. §31-1404 *et seq.* KRFD regularly conducts business in and has its principal place of business in the city of Kuna, Ada County.

3.  Defendants M.G. Bud Beatty, Jr., Chairman, Tim Crawford, Commissioner, Mike Smith, Commissioner, and Hal Harris, Commissioner are believed to be residents of Ada County, and Debi Englehardt-Vogel, Commissioner is believed to be a resident of Canyon County. These Defendants are being sued in both their official and individual capacities.

4.  Defendant Fire Chief Perry Palmer ("Chief Palmer" or "Chief") is believed to be a resident of Ada County, and at all times relevant to the claims raised herein was Fire Chief of KRFD. He is being sued in both his official capacity and in his individual capacity.

5.  Plaintiff Mr. Gammel is a citizen of the State of Idaho and a resident of Ada County, Idaho. At all times relevant to his claims, he was an employee of KRFD until his termination on April 17, 2019.

## III. JURISDICTION AND VENUE

6. This Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 with respect to Mr. Gammel' claims arising under federal law. The Court has supplemental jurisdiction over Mr. Gammel's state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper with this Court under 28 U.S.C. § 1391, as Defendant KRFD is a fire protection district located in Ada County, Idaho, the individual Defendants reside and work in Idaho, and the illegal conduct occurred within the jurisdiction of this Court.

## IV. GENERAL ALLEGATIONS

8. Mr. Gammel was hired as KRFD's Assistant Fire Chief in June of 2015 by Jon Tillman, KRFD's then Fire Chief. Mr. Gammel served in this position, and for a period of time as interim Chief, until he was fired in April 2019.

9. Perry Palmer replaced Mr. Tillman as Fire Chief in or about August 2017.

10. Mr. Gammel was never disciplined (or even provided a verbal warning) about his work performance as Assistant Chief during his nearly four years of employment with KRFD.

11. In fact, every time Mr. Gammel asked Chief Palmer for performance feedback, which he did regularly, Chief Palmer responded complimentary about his performance.

12. As Assistant Chief, Mr. Gammel supervised the firefighters, filled in as Chief whenever Chief Palmer was not available, participated on the Policy Review Committee, assured proper staffing, training and certification of all fire and EMS personnel, assisted the Chief in fire code enforcement including reviews and inspections, did plan reviews for fire code compliance, coordinated the maintenance of equipment, among other duties.

13. At some point prior to Mr. Gammel's hire at the District, KRFD decided to start providing its own ambulance service through the District as opposed to relying on Ada County to

provide that service.

14. Ada County taxed District residents for ambulance services before and after KRFD took over the service.

15. In or about March of 2018, Chief Palmer discussed the idea of a tax levy to raise income for the District. A couple of months later, the District formed a Tax Levy Review Committee.

16. Mr. Gammel was asked by the Chief to participate in these committee meetings throughout the summer/fall of 2018.

17. In or about September of 2018, the Commissioners voted to put the levy on the November ballot.

18. Mr. Gammel believed that when asking District residents to increase taxes through a levy to provide EMS, the District should be very transparent in explaining that the residents were already paying taxes for ambulance services via an Ada County tax. Additionally, if KRFD hadn't taken over the ambulance service, Ada County would have been obligated (and willing) to provide those ambulance services under the current tax, without any increase. Further, Mr. Gammel felt that by committing to provide its own EMS services through the District, it took away scarce resources that were desperately needed for Fire Protection in order to keep the public safe.

19. During these levy committee meetings, Defendant Commissioner Mike Smith made comments that were of concern to Mr. Gammel suggesting that the public knows what the public is told and that it was all smoke and mirrors in convincing the public to vote in favor of the levy.

20. Mr. Gammel adamantly disagreed and made it clear that the public needed honesty and transparency and it was the District's duty to deliver it.

COMPLAINT AND DEMAND FOR JURY TRIAL                                                                                  4

21. Mr. Gammel shared his views on the District's responsibility to be transparent and offered his view that it might save tax payer funds if they terminated the EMS Transport Service Contract and instead relied on Ada County to provide those services. He shared these views during levy meetings and in discussions with Chief Palmer, Commissioner Smith, Officer of Administration Krystal Hinkel and Defendant Commissioner Tim Crawford.

22. At some point after raising these concerns, Mr. Gammel stop receiving calendar invites to the levy meetings.

23. The District's former Officer of Administration told Mr. Gammel that mentioning his views on the levy was a "sure way to be let go."

24. The levy failed in November of 2018.

25. On April 11, 2019, Commissioner Smith told Mr. Gammel that the District decided to "go another way" with the Assistant Chief position and that his employment would end next week.

26. Mr. Gammel was understandably shocked and upset in hearing this and asked Mr. Smith if this was based on something that he had or hadn't done. Mr. Smith told Mr. Gammel that there was nothing specific and then offered Mr. Gammel the option of resigning.

27. Mr. Gammel declined to quit. When Mr. Gammel later asked Chief Palmer what was going on, Chief Palmer denied being involved in the decision making and confirmed that he had no concerns with Mr. Gammel's job performance.

28. KRFD employee policies ("Policy Code") are created by the Board of Commissioners and implemented by passing a resolution. The original Policy Code was passed by resolution in 2002. It has since been updated on multiple occasions via the resolution process.

29. Pursuant to the Policy Code, it is the duty of the Fire Chief to "hire, promote,

discipline and terminate employees in accordance with District Policy and report such actions to the board." *See* Exhibit A, at §4.6.2.7. Likewise, Title 5 of the Policy Code makes clear that the Assistant Fire Chief works under the direction of and reports to the Fire Chief. *Id.* at §5.1.1. In the Chain of Command provisions, it makes clear that only the Chief reports to the Board of Commissioners, and the Chief is in charge of the daily operations. *Id.* at §7.1.1, §7.1.2.

30. Thus, Mr. Gammel believed the decision to terminate him without involving the Chief, violated policy. Mr. Gammel also believed that the decision to terminate him violated the discipline policy.

31. The Policy Code provides a grievance process when an employee's employment is adversely affected by: 1) imposition of disciplinary action; 2) interpretation or imposition of District Policy; and/or 3) violation of District Policy. Exh. A at §8.3.1.

32. Mr. Gammel filed a grievance with the Chief on April 11th regarding his impending termination as communicated by Commissioner Smith. In his grievance he specifically alleged KRFD's failure to follow Title 5 (duties of Chief) and Title 8 (Discipline) of the District's Policy Code.

33. On April 12th, Mr. Gammel reached out to Defendant Chairman Bud Beatty to ask for a meeting to discuss his termination. Chairman Beatty told him that "no action has been taken" and that there would be a Special Meeting of the Board on April 17th. Mr. Gammel asked for the opportunity to speak to Chairman Beatty and was told that the meeting would be an "open meeting." Chairman Beatty refused to talk to Mr. Gammel outside of the "open meeting" process.

34. On April 16th, Chief Palmer acknowledged receipt of the grievance but responded by stating that he was unable to determine if the grievance stated a grievance since it involved a communication by a Commissioner (*i.e.*, Commissioner Smith was the one to tell Mr. Gammel he

was being fired). The response also said that even if it did state a grievance, he did not have authority to resolve the grievance. The response did not provide any notice regarding Mr. Gammel's rights to proceed with a grievance or appeal.

35. On or about that same day, the District posted an Agenda for a Commissioners Special Meeting. After referring to an executive session, the Agenda indicated that an action item was to consider a motion regarding the retention or dismissal of the Assistant Fire Chief "in the exercise of the will and discretion of the Board of Commissioners."

36. The very next day (April 17th) the Board held a special meeting to "discuss" Mr. Gammel's termination. However, during the special meeting, no one from the public or department, much less Mr. Gammel himself, were permitted to offer comments or have questions answered regarding the motion to fire him. In fact, when a department employee asked why Mr. Gammel was being fired, Chairman Beatty said that that question would not be addressed as it was not on the agenda.

37. Instead, the Commissioners went into an executive session to "hear complaints or charges brought against, a public . . employee. . ." Then, after returning from executive session the Commissioners voted unanimously to dismiss Mr. Gammel and to "immediately" relieve him of his active duty status and have all passwords and district property "surrendered."

38. Based on the above actions of the Board, which have been captured as part of public records, there was a clear implication that Mr. Gammel had committed severe misconduct to warrant his immediate removal and strip him of any access to or possession of District property.

39. Mr. Gammel was not provided any pre-termination or post-termination process.

40. On June 4, 2019, Mr. Gammel, through his attorney, reaffirmed his previously filed grievance and a requested a full and fair due process and name clearing hearing.

41. On July 17, 2019, KRFD's attorney contended that Mr. Gammel had no property interest in his employment, had no right to a name clearing hearing, and was not entitled to pursue a grievance.

42. Despite Commissioner Smith's April 11th notification that Mr. Gammel would be terminated (or could resign), which Mr. Gammel alleged was a violation of the Open Meetings Act, KRFD's attorney maintained that the decision to fire him had not been made until the May 8th[1] meeting.

43. Subsequent to Mr. Gammel's termination, a public records request revealed that on April 12, 2019, the day after Commissioner Smith told Mr. Gammel that the District was relieving him of his Assistant Chief position, Chief Palmer received an email from Phil Roberts with his resume, a letter of recommendation, and a 2-year accomplishments document.

44. Phil Roberts had been the Nampa City Fire Chief until he announced his "resignation" effective April 1, 2019. The Idaho Press quoted Roberts' resignation letter as saying: "I believe at this time, it is best for me to be close to my family. With aging parents who need care and grandbabies that I want to hold close and love."

45. In Roberts' April 12th email to Chief Palmer attaching his resume etc., he wrote "thanks for your help in all this. I appreciate it more than you know."

46. Five (5) days later, on April 17, 2019, the Defendant Commissioners officially and unanimously voted to fire Mr. Gammel.

47. Less than two weeks later, on May 1, 2019, KRFD hired Phil Roberts as Assistant Fire Chief upon Chief Palmer's motion.

48. Roberts' salary and benefit package was approved by the Commissioners on May

---

[1] Likely a typo given that it was at the April 17th meeting Mr. Gammel was fired, whereas his replacement's salary was set on May 8th.

COMPLAINT AND DEMAND FOR JURY TRIAL        8

8th and a consultant was hired to do plan reviews since neither Roberts nor Chief Palmer were certified to perform that job duty which was previously held by Mr. Gammel.

## V. CAUSES OF ACTION:

*1. FIRST CAUSE OF ACTION*
*(Deprivation of Mr. Gammel's Property Interest without*
*Due Process in Violation of 42 U.S.C. § 1983 against all Defendants)*

49. Mr. Gammel alleges and incorporates by reference all of the paragraphs and allegations set forth above.

50. The Board of Commissioners adopts via resolution the Policy Code. The Policy Code provides that employees are at will and "shall have no continued right to employment and/or employment benefits *except* as may be agreed in writing and expressly approved by the Board of Commissioners." *See* Ex. A at §1.1.1.2 (emphasis added).

51. The Policy Code also contains the following provisions indicating that employees will only be fired for cause:

   a. "[the] purpose of this section is to establish fair and equitable departmental procedures governing the administration of ...discipline." *See* Exh. A at §8.2.1.

   b. employees are "subject to disciplinary action commensurate with the severity of the offense of accumulations of offenses, the goal being to correct the behavior . . .." *Id.* at §8.2.3.

   c. it also outlines an employee's right to a grievance/appeals process. *Id.* at §8.2.5.

   d. §8.2.8 specifically requires cause to justify severe disciplinary action such as dismissal. In fact, subsection §8.2.8.8 spells out 15 for-cause grounds justifying disciplinary action such as termination, and §8.2.8.2 requires "probable cause" that the employee has "engaged in actions which would warrant disciplinary

    action such as dismissal, suspension or demotion" before that employee may be temporarily suspended

  e. §8.2.8.3 & §8.2.8.6 also requires written notice be given to the regarding the reasons and evidence supporting discipline and written notification of the opportunity to appeal.

52. Mr. Gammel did not sign an acknowledgment that he was an at-will employee. His offer letter had no mention of at-will employment.

53. Based on the Policy Code provisions listed above requiring just-cause for discipline, Mr. Gammel had a reasonable expectation and a legitimate claim of entitlement to continued employment and therefore had a property interest in his employment.

54. Denying Mr. Gammel both a pre-termination hearing, a full and fair post-termination hearing, rejecting his grievance, and rejecting his post-termination request for due process, Defendants' actions violated his rights to due process of law under the United States Constitution.

55. At all times relevant hereto, Defendants acted under color of state law when committing the acts complained of.

56. Defendant Commissioners had final policy making authority and exercised that authority in Plaintiff's termination and the denial of due process.

57. Defendants' acted deliberately in violating Mr. Gammel's rights under the Fourteenth Amendment to the U.S. Constitution.

58. Defendants' conduct violated the clearly established constitutional right to due process of which a reasonable person would have known.

59. Mr. Gammel has been injured by Defendants' conduct and has suffered and

will continue to suffer losses. Pursuant to 42 U.S.C. § 1983 he is entitled to all available relief, including injunctive relief, back pay, reinstatement and/or front pay, and actual and compensatory damages, as well as costs and attorney fees.

60. The individual Defendants' conduct was willful and intentional, malicious, and exhibits reckless or callous indifference to Mr. Gammel's constitutional rights thereby entitling him to punitive damages.

## 2. SECOND CAUSE OF ACTION
*(Deprivation of Mr. Gammel' Liberty Interest in Violation of the Constitution pursuant to 42 U.S.C. § 1983 against All Defendants)*

61. Mr. Gammel alleges and incorporates by reference all of the paragraphs and allegations set forth above.

62. Mr. Gammel has a liberty interest in his good name, reputation, and in continued and future employment.

63. Defendants infringed upon Mr. Gammel's liberty interests by impugning his good name, honor, and integrity after terminating his employment during a public meeting in which they noticed up his impending termination on the agenda posted prior to the meeting and then went into executive session to "hear complaints or charges brought against, a public . . employee. . ." Then, after returning from executive session the Commissioners voted unanimously to dismiss Mr. Gammel and to "immediately" relieve him of his active duty status and have all passwords and district property "surrendered." Additionally, the Commissioners refused to take questions from the audience related to Mr. Gammel's termination, refused to meet with or discuss its decision to terminate Mr. Gammel with him, and rejected his grievance.

64. The above actions and public records impose a stigma on his professional reputation.

65. As a result of Defendants' wrongful conduct, Mr. Gammel's professional reputation has been adversely impacted and it has foreclosed other employment opportunities.

66. As a result, Mr. Gammel requested a name-clearing hearing less than two months after his firing. Defendants refused to provide the same.

67. At all times relevant hereto, Defendants acted under color of state law when committing the acts complained of.

68. Defendant Commissioners had final policy making authority and exercised that authority in Plaintiff's termination and the denial of due process.

69. Defendants' acted deliberately in violating Mr. Gammel's rights under the Fourteenth Amendment to the U.S. Constitution.

70. Individual Defendants' conduct violated the clearly established constitutional right to substantive due process of which a reasonable person would have known.

71. Mr. Gammel is entitled, pursuant to 42 U.S.C. § 1983, to all available relief, including back pay, benefits, and front pay, emotional distress damages, as well as costs and attorney fees.

72. Individual Defendants' conduct was willful and intentional, malicious, and exhibits reckless or callous indifference to Mr. Gammel's constitutional rights, thereby entitling him to punitive damages.

*3. THIRD CAUSE OF ACTION*
*(Retaliation in violation of the*
*Idaho Protection of Public Employees Act against KRFD)*

73. Plaintiff alleges and incorporates by reference all of the paragraphs and allegations set forth above.

74. Mr. Gammel engaged in protected activity when he: communicated his objection to Commissioner Smith's suggestion that the District mislead the public with regard to the tax levy; insisted that the District had a duty to be honest and transparent about the need for the tax levy and the taxes that were already being paid to the County; and objected to the District's operation of the Ambulance services at the expense of the District's ability to sufficiently provide appropriate fire protection services.

75. These communications were made in good faith about possible waste and suspected violations of law.

76. Defendants took adverse action against Mr. Gammel by terminating his employment because of his protected activity.

77. Mr. Gammel has been injured as result of Defendants' adverse action and he is entitled to injunctive relief, reinstatement, with full fringe benefits and seniority, compensation for lost wages and benefits, compensatory damages and costs and attorneys' fees.

### 4. FOURTH CAUSE OF ACTION
*(Breach of Good Faith Fair Dealing – against KRFD)*

78. Mr. Gammel alleges and incorporates by reference all of the paragraphs and allegations set forth above.

79. Implied in Mr. Gammel's employment relationship with KRFD is a covenant of good faith and fair dealing.

80. The District's Code provides for a variety of benefits attendant to one's employment which were denied to Mr. Gammel. Those benefits include:

   a. that its administration of discipline will be fair and equitable, including that any disciplinary action commensurate with the severity of the offense of accumulations of offenses, the goal being to correct the behavior . . .."

      b. a right to a grievance/appeals process; and,

      c. written notice be given to the employee with an opportunity to respond before the termination decision is made, as well as written notification of the opportunity to appeal.

81. All of these benefits were repeatedly denied to Plaintiff.

82. He has suffered damages including lost pay and benefits, and attorneys' fees and costs as a result of Defendant's breach.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award the following relief:

a. Back pay, in amounts to be determined at trial:

b. Compensatory and consequential damages;

c. Punitive damages as allowable;

d. Reinstatement and/or front pay in lieu of reinstatement;

e. Injunctive and/or declaratory relief;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. An offset for any additional tax burden for economic damages;

h. Attorneys' fees and costs of this action, including expert witness fees, as appropriate; and

i. Any such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 7th day of October, 2019.

**STRINDBERG & SCHOLNICK, LLC**

__/s/ Jonathan K. Thorne_____
Erika Birch
Jonathan K. Thorne
*Attorneys for Plaintiff*